UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MAHMOUD AL-SALAH, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case number 4:06cv1748 TCM |
| | ) | |
| LARRY ROWLEY and | ) | |
| CHRIS KOSTER, Attorney General | ) | |
| for the State of Missouri,[1] | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM AND ORDER

The 28 U.S.C. § 2254 petition of Mahmoud Al-Salah, a Missouri prisoner, for federal habeas corpus relief is before the undersigned Magistrate Judge for a final disposition pursuant to the parties' written consent. See 28 U.S.C. § 636(c)

### Background

Mahmoud Al-Salah ("Petitioner") was charged by information in September 2003 in St. Charles County, Missouri, on twenty-seven felony counts of passing thirty-two bad checks. (Resp. Ex. B at 8-19.) The checks were all made payable to Ameristar Casino or "ASC," an abbreviation for Ameristar Casino, and were, with the exception of seven checks, in the amount of $1,000.00. (Id.) Two months later, he was charged in a new case with two more

---

[1]Because Petitioner is challenging a sentence he will be serving in the future, the Court will add the Attorney General of the State of Missouri, Chris Koster, as a proper party respondent. See Rule 2(b), Rules Governing Section 2254 in the United States District Courts.

counts of passing bad checks, each made payable to the casino and each in the amount of $1,000. (Id. at 25-26.)

In March 2004, Petitioner pled guilty to all twenty-nine felonies. (Resp. Ex. B at 8-9.) Before doing so, he, under oath, affirmed that he had signed each page of a "Petition to Enter Plea of Guilty" after reading and understanding it. (Id. at 3, 5.) All the statements he made in the Petition were "true and accurate." (Id. at 5.) The Petition included a paragraph referring to negotiations between the defendant's counsel and the prosecutor and with lines for a summary of the agreed-upon sentence. (Resp. Ex. C at 3.) In Petitioner's case, the paragraph was crossed out and "open" was written in the margin. (Id.)

Petitioner further affirmed that no one had promised him anything, threatened him, or forced him to get him to plead guilty. (Resp. Ex. B at 6.) He understood the rights he was waiving by pleading guilty. (Id. at 6-7.) He also understood that he would not be able to set aside his plea of guilty if he changed his mind or if he was unhappy with the court's sentence. (Id. at 9.) The prosecutor then outlined all twenty-nine counts and he and trial counsel confirmed that there had been no plea negotiations and there was no plea agreement. (Id. at 9-13.) The range of punishment on each count was from one day to one year in the county jail, from two years to four years in a state correctional center, and/or a fine. (Id. at 13.) The maximum length of imprisonment was 126 years. (Id. at 13-14.) This range was also outlined in the Petition. (Resp. Ex. C at 3.) Petitioner affirmed that he understood the range of punishment and repeated that he realized his sentence was entirely within the court's discretion. (Id. at 13-14.)

Petitioner explained that he had passed the bad checks because he was addicted to gambling. (Id. at 5, 14-15.) He admitted writing each of the bad checks. (Id. at 15.) The court accepted his plea. (Id. at 17.)

Two months later, Petitioner appeared for sentencing. (Id. at 18.) The Missouri State Board of Probation and Parole recommended probation, with special conditions. (Id.) The prosecutor introduced the testimony of an officer with the Missouri Highway Patrol, of the chief investigator for the St. Charles County Prosecutor, and of a manager with Ameristar Casino, who testified that Petitioner's practice of cashing checks for more than he spent at the casino was not indicative of an addicted gambler. (Id. at 20-70.) The prosecutor also introduced into evidence a copy of a 1993 deceptive business charge in Illinois, a prior forgery conviction, four applications made within one month of each other for Missouri driver's license identification cards, each with a different name or address, and four applications for Social Security numbers, made over a period of seven years. (Id. at 71-74.) Petitioner apologized for the deceit caused by his gambling addition. (Id. at 88-90.)

In rejecting the probation office's sentencing recommendation, the court noted that the information before it was that there was a $50,000 difference between the amount of cash Petitioner received from the casino and the amount that he won or lost. (Id. at 90.) There was no indication that he had done anything illegal with the surplus, but there was a pattern of financial activities that were "shady." (Id. at 90-91.) He had moved from place to place and had a pattern of deception. (Id. at 91.) Also, he had been wanted on charges from another jurisdiction for seven years before resolving the charges. (Id.) The court sentenced Petitioner

to four year terms of imprisonment on each charge in each case, with the terms in each case to run concurrently to each other but consecutively to those in the other case. (Id. at 91-92.) Thus, Petitioner was sentenced to an aggregate term of eight years imprisonment. (Id.)

Petitioner did not appeal, but he did timely seek postconviction relief. (Resp. Ex. B at 31-36.) The motion, amended by appointed counsel, alleged that Petitioner's guilty plea was not voluntary, knowing, or intelligent and was a violation of due process because it was based on trial counsel's assurances he would receive probation and not incarceration. (Id. at 38-46.) Relief was denied without an evidentiary hearing. (Id. at 56-62.) The court[2] found the claim was refuted by the record. (Id. at 59-62.)

Petitioner appealed, arguing that he was denied his rights to the effective assistance of counsel and to due process because he was misinformed and misled by trial counsel's assurances he would receive probation and had he known he would not, he would have insisted on going to trial. (Resp. Ex. D.) The appellate court disagreed. (Resp. Ex. F.) After quoting from several colloquies between Petitioner and the trial court, the appellate court found as follows.

> Considering the record, [Petitioner] could not have reasonably believed that he would receive probation instead of imprisonment. The judge's explanation of blind plea during the plea hearing eliminated any reasonable basis for such a belief. Moreover, the judge explained to [Petitioner] that he could be sentenced to one hundred sixteen years[3] imprisonment. Since there

---

[2]The same judge who presided over the criminal proceedings presided over the postconviction proceedings.

[3]The number cited by the trial court was 126 years. (Resp. Ex. A at 14.)

is no reasonable basis for [Petitioner's] belief in light of the guilty plea record, [Petitioner] is not entitled to an evidentiary hearing based on his claim that his counsel was ineffective for misadvising him about his possible sentence.

[Petitioner] argues that certain statements made to the court prove that his attorney misled him into believing he would receive probation. At his plea hearing, [Petitioner] stated "I . . . want to plead guilty from the beginning because I have the intention to pay this money back." [Petitioner] argues that he would not have been able to pay the money back if he was imprisoned. [Petitioner] also argues that his request to move up the sentencing because he wanted to see his children[4] indicated that he believed he would be sentenced to probation. While these statements may indicate that [Petitioner] expected to be granted probation after sentencing, they do not prove that [Petitioner's] *attorney* led him to this belief or that his belief was reasonable. [Petitioner] specifically stated at the plea hearing that his attorney made him no such promises. . . . Here, there is noting in the record that indicates that [Petitioner's] belief was based on positive misrepresentations by his plea counsel. Indeed, the record indicates that [Petitioner] was not promised any particular sentence and he understood he faced a possible prison term of more than 100 years.

(Id. at 7-8.) (Ellipsis in original.) (Footnote added.)

Petitioner now seeks federal habeas relief on the grounds that his plea was not voluntary, intelligent, or knowing and was a violation of due process because it was based on the assurances of his attorney that he would be sentenced to probation.[5] Respondent argues the state appellate court's decision is not contrary to, nor an unreasonable application of, Supreme Court precedent.

## Discussion

---

[4]Petitioner had not been able to make bond.

[5]In his pro se petition, Petitioner breaks this ground down into three claims, i.e., (1) his plea was not voluntary, intelligent, or knowing; (2) he received ineffective assistance of counsel, and (3) his due process rights were violated. The three grounds vary only in their title; the substance is identical. Moreover, the three were presented to the state appellate court as one ground. Consequently, the Court will address the three as one.

Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts only if the adjudication "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States'" or "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" **Collier v. Norris**, 485 F.3d 415, 421 (8th Cir. 2007) (quoting § 2254(d)). "'[A] decision is "contrary to" federal law . . . if a state court has arrived at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if it confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent but arrived at an opposite result.'" **Id.** (quoting Davis v. Norris, 423 F.3d 868, 874 (8th Cir. 2005)) (all but first alteration in original). "'A state court unreasonably applies clearly established federal law when it identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" **Id.** (quoting Davis, 423 F.3d at 874) (alteration in original).

The state courts found that Petitioner failed to show that the performance of his trial counsel was deficient and that he was prejudiced by this performance.

It is well established that "a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann[ v. Richardson, 397 U.S. 759 (1970)].'" **Hill v. Lockhart**, 474 U.S. 52, 56-57 (1985) (quoting Tolett v. Henderson, 411 U.S. 258, 267 (1970)). Consequently, to obtain habeas relief

Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts only if the adjudication "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States'" or "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" **Collier v. Norris**, 485 F.3d 415, 421 (8th Cir. 2007) (quoting § 2254(d)). "'[A] decision is "contrary to" federal law . . . if a state court has arrived at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if it confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent but arrived at an opposite result.'" **Id.** (quoting Davis v. Norris, 423 F.3d 868, 874 (8th Cir. 2005)) (all but first alteration in original). "'A state court unreasonably applies clearly established federal law when it identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" **Id.** (quoting Davis, 423 F.3d at 874) (alteration in original).

The state courts found that Petitioner failed to show that the performance of his trial counsel was deficient and that he was prejudiced by this performance.

It is well established that "a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann[ v. Richardson, 397 U.S. 759 (1970)].'" **Hill v. Lockhart**, 474 U.S. 52, 56-57 (1985) (quoting Tolett v. Henderson, 411 U.S. 258, 267 (1970)). Consequently, to obtain habeas relief

Petitioner must show that his counsel's performance was deficient, i.e., counsel's representation fell below an objective standard of reasonableness, and that he would not have pleaded guilty to the two cases and would have insisted on going to trial but for that deficient performance.  See **Gumangan v. United States**, 254 F.3d 701, 705 (8th Cir. 2001); **Wilcox v. Hopkins**, 249 F.3d 720, 722 (8th Cir. 2001); **Witherspoon v. Purkett**, 210 F.3d 901, 903 (8th Cir. 2000).  And, "[i]n determining whether counsel's conduct was objectively reasonable, there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  **Nguyen v. United States**, 114 F.3d 699, 704 (8th Cir. 1997) (quoting Strickland v. Washington, 466 U.S. 668, 689 (1984)).  "The prejudice inquiry in such cases 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the *plea process*.'"  **Wanatee v. Ault**, 259 F.3d 700, 703 (8th Cir. 2001) (quoting Hill, 474 U.S. at 59).

As noted by both the state motion court and appellate court, Petitioner's current claims of being misled by trial counsel's assurances he would receive probation are refuted by the record.  That record includes Petitioner's own assurances, made under oath, that he was pleading guilty without any plea negotiations and agreement and with the knowledge that he might receive a 126-year sentence.  No one had promised him anything.  No one had threatened or forced him to plead guilty.  "Solemn declarations in open court carry a strong presumption of verity[,]" **Blackledge v. Allison**, 431 U.S. 63, 74 (1977); thus, it is a heavy burden to overcome admissions at a plea hearing to show that the plea was involuntary,

**Nguyen**, 114 F.3d at 703. Petitioner was gambling that he would receive probation. Had the trial court accepted the presentence investigation recommendation he would have. Instead, after hearing testimony and accepting evidence indicating that Petitioner's long chain of bad checks reflected something more far-reaching than a gambling addiction, the court sentenced him to an aggregate term of eight years' imprisonment. As Petitioner had affirmed he knew, the court was free to sentence him as it chose, within the permissible statutory range.

In **United States v. McKnight**, 186 F.3d 867 (8th Cir. 1999), the Eighth Circuit Court of Appeals rejected a habeas claim that a defendant was misled at his change of plea hearing as to the length of the sentence. The court noted that some statements had been made indicating a "reasonable expectation" of a lesser sentence than imposed; however, the plea agreement and colloquy indicated that the defendant knew he faced a greater sentence. **Id.** at 869. The court concluded that the defendant's hope of a lesser sentence did "not translate into a claim for habeas relief." **Id.** Similarly, in **United States v. Has No Horses**, 261 F.3d 744, 749 (8th Cir. 2001), the court rejected a claim that erroneous advice by counsel about an expected sentence entitled the defendant to set aside his guilty plea, finding that the defendant had testified that he understood that the judge was not bound by a particular sentence and that he might receive a different sentence than expected. See also **Premachandra v. United States**, 101 F.3d 68, 69 (8th Cir. 1996) (rejecting habeas claim that guilty plea was not voluntary because trial counsel had incorrectly informed petitioner that he would not serve a lengthy prison term if he pleaded guilty; at change of plea hearing, petitioner expressly

acknowledged (i) potential sentence he faced, (ii) uncertainty as to that sentence until pre-sentence report had been received, and (iii) his commitment to the plea even if he received a longer sentence than expected).

Whatever Petitioner hoped his sentence would be, his guilty plea was not induced by any promises or misinformation about its length or character.

For the foregoing reasons, Petitioner's guilty plea was not involuntary, unknowing, caused by the ineffective assistance of counsel, or a violation of due process. Accordingly,

**IT IS HEREBY ORDERED** that the 28 U.S.C. § 2254 petition of Mahmoud Al-Salah is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  4th  day of March, 2010.